___ FILED      ✓ LODGED
___ RECEIVED   ___ COPY

SEP 2 9 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

1  ELIZABETH A. STRANGE
   Acting United States Attorney
2  District of Arizona
   MONICA EDELSTEIN
3  Assistant U.S. Attorney
   Arizona State Bar No. 023098
4  Two Renaissance Square
   40 N. Central Ave., Suite 1200
5  Phoenix, Arizona 85004
   Telephone: 602-514-7500
6  Email: monica.edelstein@usdoj.gov
   Attorneys for Plaintiff
7

8              IN THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF ARIZONA
9

10 United States of America,                    CR-17-1083-03-PHX-GMS

11              Plaintiff,
                                                PLEA AGREEMENT
12      vs.

13
   Rachel V. Ellerbrock,
14
                Defendant.
15

16      Plaintiff, United States of America, and the defendant, RACHEL V.

17 ELLERBROCK, hereby agree to dispose of this matter on the following terms and

18 conditions:

19 **1.    PLEA**

20      The defendant will plead guilty to Count 1 of the information charging the defendant

21 with a violation of 18 United States Code (U.S.C.) § 371, Conspiracy to Commit

22 Transactional Money Laundering, a Class D felony offense.

23 **2.    MAXIMUM PENALTIES**

24      a.    A violation of 18 U.S.C. § 371, is punishable by a maximum fine of

25 $250,000, a maximum term of imprisonment of 5 years, or both, and a term of supervised

26 release of 3 years. A maximum term of probation is five years.

27      b.    According to the Sentencing Guidelines issued pursuant to the Sentencing

28 Reform Act of 1984, the Court shall order the defendant to:

(1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)     serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)     pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3.     AGREEMENTS REGARDING SENTENCING**

a.     Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the loss associated with the defendant's unlawful conduct as it relates to the embezzlement scheme is $110,000.00, and that for purposes of calculating the applicable Guideline range, Sentencing Guideline Section 2B1.1 should apply.

b.     Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $110,000.00, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's

- 2 -

1 | guilty plea or to withdraw from this plea agreement.

2      c.     Assets and Financial Responsibility.  The defendant shall make a full
3 accounting of all assets in which the defendant has any legal or equitable interest.  The
4 defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or
5 transfer any such assets or property before sentencing, without the prior approval of the
6 United States (provided, however, that no prior approval will be required for routine, day-
7 to-day expenditures).  The defendant also expressly authorizes the United States Attorney's
8 Office to immediately obtain a credit report as to the defendant in order to evaluate the
9 defendant's ability to satisfy any financial obligation imposed by the Court.  The defendant
10 also shall make full disclosure of all current and projected assets to the U.S. Probation
11 Office immediately and prior to the termination of the defendant's supervised release or
12 probation, such disclosures to be shared with the U.S. Attorney's Office, including the
13 Financial Litigation Unit, for any purpose.  Finally, the defendant shall participate in the
14 Inmate Financial Responsibility Program to fulfill all financial obligations due and owing
15 under this agreement and the law.

16      d.     Acceptance of Responsibility.  If the defendant makes full and complete
17 disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's
18 commission of the offense, and if the defendant demonstrates an acceptance of
19 responsibility for this offense up to and including the time of sentencing, the United States
20 will recommend a two-level reduction in the applicable Sentencing Guidelines offense
21 level pursuant to U.S.S.G. § 3E1.1(a).  If the defendant has an offense level of 16 or more,
22 the United States will recommend an additional one-level reduction in the applicable
23 Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

24 **4.    AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

25      a.     This office shall not prosecute the defendant for any offenses committed by
26 the defendant, and known by the United States, in connection with this matter and the
27 defendant's role in the operation of Eagle Property Management, Inc.

28

- 3 -

1   of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to
2   bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial
3   misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

4   **7.    DISCLOSURE OF INFORMATION**

5       a.      The United States retains the unrestricted right to provide information and
6   make any and all statements it deems appropriate to the U.S. Probation Office and to the
7   Court in connection with the case.

8       b.      Any information, statements, documents, and evidence that the defendant
9   provides to the United States pursuant to this agreement may be used against the defendant
10  at any time.

11      c.      The defendant shall cooperate fully with the U.S. Probation Office. Such
12  cooperation shall include providing complete and truthful responses to questions posed by
13  the U.S. Probation Office including, but not limited to, questions relating to:

14          (1)     criminal convictions, history of drug abuse, and mental illness; and

15          (2)     financial information, including present financial assets or liabilities
16  that relate to the ability of the defendant to pay a fine or restitution.

17  **8.    FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

18      a.      Nothing in this agreement shall be construed to protect the defendant from
19  administrative or civil forfeiture proceedings or prohibit the United States from proceeding
20  with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all
21  monetary penalties, including restitution imposed by the Court, shall be due immediately
22  upon judgment, shall be subject to immediate enforcement by the United States, and shall
23  be submitted to the Treasury Offset Program so that any federal payment or transfer of
24  returned property the defendant receives may be offset and applied to federal debts (which
25  offset will not affect the periodic payment schedule). If the Court imposes a schedule of
26  payments, the schedule of payments shall be merely a schedule of minimum payments and
27  shall not be a limitation on the methods available to the United States to enforce the
28  judgment.

1  **9.    ELEMENTS**

2                                  **Conspiracy**

3       In or about January 2010 and May 2014, in the District of Arizona:

4       1.    There was an agreement between two or more persons to commit the crime

5  charged in the information;

6       2.    The defendant became a member of the conspiracy knowing of its object and

7  intending to help accomplish it; and

8       3.    At least one of the members of the conspiracy performed at least one overt

9  act for the purposes of carrying out the conspiracy.

10                    **Transactional Money Laundering, 18 U.S.C. § 1957**

11      Between about January 2010 and May 2014, in the District of Arizona:

12      1.    The defendant knowingly engaged or attempted to engage in a monetary

13  transaction;

14      2.    The defendant knew the transaction involved criminally derived property;

15      3.    The property had a value greater than $10,000;

16      4.    The property was, in fact, derived from wire fraud; and

17      5.    The transaction occurred in the United States.

18  **10.   FACTUAL BASIS**

19      a.    The defendant admits that the following facts are true and that if this matter

20  were to proceed to trial the United States could prove the following facts beyond a

21  reasonable doubt:

22      In or around December 2004, the defendant became the Vice President of EPMI,

23  Inc. (EPMI), a property management company located in the Phoenix area whose clients

24  primarily included homeowners associations (HOAs).  Many of the defendant's family

25  members also worked or had management roles at EPMI, including the defendant's sister

26  Kelsey Powell, and the defendant's brother-in-law Michael Powell.   The property

27  management company was originally owned and operated by the defendant's father H.W.

28  As part of EPMI's management agreement with its HOA clients, EPMI conducted

1   electronic account transfers from the HOA client bank accounts to EPMI's operating bank
2   account to collect management fees, maintenance fees, and other expenses related to the
3   management of the client HOAs.

4       Between January 2010 and May 2014, Kelsey Powell and others electronically
5   transferred at least $1,299,552.00 out of the HOA client bank accounts into the EPMI bank
6   account for personal use for herself and others.    The defendant knew that these
7   unauthorized transfers were characterized as "deposits in transit" on the bank reconciliation
8   documents prepared by EPMI employees that the defendant provided to HOA clients she
9   managed. The defendant knew that these transfers into the EPMI bank account involved
10  proceeds from the theft scheme.  The defendant and others used the stolen funds to pay
11  personal expenses unrelated to the operation of EPMI including the payment of personal
12  credit card debts, mortgages, and other personal expenses.  The defendant and others used
13  a large portion of the HOA client money transferred into EPMI's account to pay personal
14  expenses charged to American Express business credit cards issued in the defendant's and
15  others' names.  For example, on or about, September 6, 2013, Kelsey Powell authorized
16  EPMI check number 2547 in the amount of $15,376.13 to American Express to pay
17  personal credit card expenses, including expenses incurred by the defendant.  During the
18  scheme, the defendant personally benefitted in the amount of $110,000.00 from the theft
19  of HOA client funds.

20      b.       The defendant shall swear under oath to the accuracy of this statement and,
21  if the defendant should be called upon to testify about this matter in the future, any
22  intentional material inconsistencies in the defendant's testimony may subject the defendant
23  to additional penalties for perjury or false swearing, which may be enforced by the United
24  States under this agreement.

25                **APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

26      I have read the entire plea agreement with the assistance of my attorney.  I
27  understand each of its provisions and I voluntarily agree to it.

28

- 7 -

1        I have discussed the case and my constitutional and other rights with my attorney.
2   I understand that by entering my plea of guilty I shall waive my rights to plead not guilty,
3   to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to
4   present evidence in my defense, to remain silent and refuse to be a witness against myself
5   by asserting my privilege against self-incrimination, all with the assistance of counsel, and
6   to be presumed innocent until proven guilty beyond a reasonable doubt.

7        I agree to enter my guilty plea as indicated above on the terms and conditions set
8   forth in this agreement.

9        I have been advised by my attorney of the nature of the charges to which I am
10  entering my guilty plea. I have further been advised by my attorney of the nature and range
11  of the possible sentence and that my ultimate sentence shall be determined by the Court
12  after consideration of the advisory Sentencing Guidelines.

13       My guilty plea is not the result of force, threats, assurances, or promises, other than
14  the promises contained in this agreement. I voluntarily agree to the provisions of this
15  agreement and I agree to be bound according to its provisions.

16       I understand that if I am granted probation or placed on supervised release by the
17  Court, the terms and conditions of such probation/supervised release are subject to
18  modification at any time. I further understand that if I violate any of the conditions of my
19  probation/supervised release, my probation/supervised release may be revoked and upon
20  such revocation, notwithstanding any other provision of this agreement, I may be required
21  to serve a term of imprisonment or my sentence otherwise may be altered.

22       This written plea agreement, and any written addenda filed as attachments to this
23  plea agreement, contain all the terms and conditions of the plea.  Any additional
24  agreements, if any such agreements exist, shall be recorded in a separate document and
25  may be filed with the Court under seal; accordingly, additional agreements, if any, may not
26  be in the public record.

27       I further agree that promises, including any predictions as to the Sentencing
28  Guideline range or to any Sentencing Guideline factors that will apply, made by anyone

(including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

Date    7/29/17

RACHEL V. ELLERBROCK
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

Date    7/29/17

DAVID EISENBERG
Attorney for Defendant

- 9 -

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement.  I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
Acting United States Attorney
District of Arizona

9/29/17
Date

MONICA EDELSTEIN
Assistant U.S. Attorney

**ACCEPTANCE BY THE COURT**

Date

Honorable
United States District Judge

- 10 -